UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GINA MARIE GULCZEWSKI,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00509 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Gina Marie Gulczewski ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 5; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, Defendant's motion (Dkt. 8) is denied and Plaintiff's motion (Dkt. 5) is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for DIB on September 26, 2014. (Dkt. 4 at 123).[1] In her application, Plaintiff alleged disability beginning December 31, 2010, due to "back surgery and pain," depression, high anxiety, thyroid cancer in remission, and impaired vision. (*Id*. at 123, 276, 288). Plaintiff's application was initially denied on May 5, 2015. (*Id*. at 196-98). At Plaintiff's request, a video hearing was held on August 17, 2017, before administrative law judge ("ALJ") Michael Carr, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding from the National Hearing Center in Falls Church, Virginia. (*Id.* at 145-85, 204-51). On October 24, 2017, the ALJ issued an unfavorable decision. (*Id.* at 120-40). Plaintiff requested Appeals Council review; her request was denied on February 26, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2012. (Dkt. 4 at 125). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from December 31, 2010, the alleged onset date, through September 30, 2012, the date last insured. (*Id.*).

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of cervical and lumbar degenerative disc disease, "status post (s/p) thyroid cancer," and blurred vision. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of headaches was nonsevere and that her alleged depression and anxiety were not medically determinable impairments. (*Id.* at 126).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.04, 2.02, 2.04, and 13.09 in reaching his conclusion. (*Id.* at 126-27).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following specific limitations:

> [Plaintiff] could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could not climb ladders, ropes or scaffolds. She could avoid ordinary hazards in the workplace, but could not be exposed to unprotected heights. She could not operate dangerous machinery, operate a

>motor vehicle for commercial purposes, or operate heavy equipment. She could occasionally read, either words in print or on a monitor.

(*Id.* at 127). At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (*Id.* at 134).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed through the date last insured, including the representative occupations of housekeeping cleaner, sales clerk, and stocker. (*Id.* at 135-36). Accordingly, the ALJ found Plaintiff not disabled as defined in the Act from the alleged onset date through the date last insured. (*Id.* at 136).

## II.     Remand of this Matter for Further Proceedings Is Necessary

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the RFC finding is not supported by any competent medical opinion evidence. (*See* Dkt. 5-1 at 1). For the reasons set forth below, the Court agrees that the ALJ erred in assessing Plaintiff's RFC without relying on competent medical opinion and finds that this error necessitates remand for further administrative proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's

RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

In this case, the ALJ considered the following opinion evidence in assessing Plaintiff's RFC: (1) an April 2009 opinion by treating neurosurgeon Dr. John Pollina in which he stated that Plaintiff was limited in bending and "repetitive back activities" and could sit for one hour and lift 20 pounds; (2) three 2011 opinions from treating internal medicine specialist Dr. Deirdre Bastible, who indicated that Plaintiff was unable to work due to her inability to see; (3) a December 2016 opinion from Dr. Bastible in which she stated that Plaintiff "was unable to maintain employment and was permanently disabled due to her medical conditions that started in 2005 and continued into the present day"; (4) a 2007 opinion from physical medicine specialist Andrew Matteliano stating that Plaintiff had a "moderate to marked partial permanent disability"; (5) additional opinions from Dr. Pollina and others in his office from 2008 and 2009 stating that Plaintiff was temporarily totally disabled; and (6) numerous opinions from treating pain specialist Dr. Eugene Gosy

in 2011 and 2012 indicating that Plaintiff had a 33% temporary impairment.[2] (Dkt. 4 at 132-34). For various reasons, the ALJ assigned little weight to all of these opinions. (*Id*.).

The ALJ then went on to assess Plaintiff's RFC based on his own interpretation of her medical records. For example, the ALJ determined that because Plaintiff had "radiating neck and back pain, decreased range of neck and back motion and thyroid cancer related fatigue," but also had "5/5 extremity strength, normal gait, normal coordination, intact extremity sensations, and symptom improvement s/p lumbar spine and thyroid cancer surgeries," she was capable of lifting and carrying 20 pounds occasionally and ten pounds frequently, sitting for two hours in an eight-hour workday, and standing and/or walking for six hours in an eight-hour workday. (Dkt. 4 at 132). "While in some circumstances, an ALJ may make an RFC finding without . . . opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Muhammad v. Colvin*, No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." *Quinto*, 2017 WL 6017931, at *12 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911-13 (N.D. Ohio 2008)). That is precisely what the ALJ here did—he impermissibly reviewed the bare medical findings and translated them into functional assessments. This

---

[2] Although the ALJ stated that these opinions were authored by physician's assistants and nurse practitioners in Dr. Gosy's office, they were co-signed by Dr. Gosy. (*See, e.g.,* Dkt. 4 at 470, 474, 478, 482, 486, 490, 494, 502). An ALJ "must consider a treating physician's co-signature as an opinion authored by the treating physician himself, and must accord it the proper weight." *Lewis v. Colvin*, No. 12-CV-01317 WGY, 2014 WL 6687484, at *5 (N.D.N.Y. Nov. 25, 2014). It was thus an additional error for the ALJ not to treat these opinions as having been authored by Dr. Gosy.

is reversible error.  *See Henderson v. Berryhill*, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding the ALJ's RFC finding was improper "[i]n the absence of the medical opinions rejected by the ALJ" and where the ALJ relied upon "raw medical data" in the plaintiff's treatment notes).

Defendant's reliance on *Monroe v. Colvin*, 676 F. App'x 5 (2d Cir. 2017) (*see* Dkt. 8-1 at 9) is misplaced.  *Monroe* stands for the proposition that the record need not contain a formal medical source statement or opinion if it otherwise contains a useful assessment of a claimant's functional abilities from a medical source.  *See Monroe*, 676 F. App'x at 8-9.  As another judge in this District recently explained, "[w]here the record does not contain a useful assessment of Plaintiff's physical limitations, *Monroe* is of no help to the Commissioner."  *Bartha v. Comm'r of Soc. Sec.*, No. 18-CV-0168-JWF, 2019 WL 4643584, at *3 (W.D.N.Y. Sept. 24, 2019) (quotation omitted).  In this case, apart from the opinions rejected by the ALJ, the record "is devoid of any assessment of plaintiff's exertional limitations and does not even contain any useful discussion of such limitations." *Id*. at *2.  On these facts, remand of this matter for further administrative proceedings is required.

The Court rejects Defendant's argument that the ALJ was permitted to make a "common sense judgment about Plaintiff's RFC."  (Dkt. 8-1 at 10).  While it is true that in cases where a claimant has only minimal limitations an ALJ may "render a common sense judgment about functional capacity even without a physician's assessment," *Sheri S. v. Berryhill*, No. 3:18-CV-192 (DJS), 2019 WL 1429522, at *5 (N.D.N.Y. Mar. 29, 2019), this is not such a case.  Plaintiff had multiple severe impairments, including degenerative

disc disease of such severity that she was required to undergo lumbar disc replacement surgery and thyroid cancer necessitating a total thyroidectomy. She also had bilateral vision loss with thinning of her optic nerve fiber layer. "Common sense" does not encompass the functional limitations associated with these complex medical conditions. *See Zayas v. Colvin*, No. 15-CV-6312-FPG, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016) (concluding that a medical opinion assessing the plaintiff's functional impairments was required where the plaintiff "had several complicated and longstanding impairments").

Finally, the Court agrees with Plaintiff that, on the facts of this case, the ALJ should have recontacted Dr. Bastible for clarification of her 2016 opinion. "The expert opinions of a treating physician are of particular importance to a disability determination." *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *7 (D. Conn. Mar. 14, 2018). While the Commissioner's regulations do not require an ALJ to recontact a treating physician in all cases of ambiguity, they "contemplate the ALJ re-contacting treating physicians when the additional information needed is directly related to that source's medical opinion" and "in cases (like the one at bar) where re-contacting the treating source is the best, if not the only way to resolve the [ambiguity], it is incumbent upon the ALJ to do so." *Ballard v. Comm'r of Soc. Sec.*, No. 19 CIV. 673 (PED), 2020 WL 1031908, at *17 (S.D.N.Y. Mar. 2, 2020) (quotations and alteration omitted).

Here, Dr. Bastible, Plaintiff's long-time treating physician, issued an opinion in 2016 that purported on its face to relate to her ability to function during the relevant time frame. The ALJ rejected this opinion because it "was penned years after the date last insured, and merely stated that her conditions began in 2005, with no specificity or

reference to work-related restrictions." (Dkt. 4 at 132). The Court notes as an initial matter that an ALJ may not disregard a treating physician's opinion on the basis that it is retrospective. *See Reynolds v. Colvin*, 570 F. App'x 45, 48 (2d Cir. 2014) ("[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." (quoting *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003))).

Further, while it is true that Dr. Bastible did not offer a functional analysis of Plaintiff's limitations, "it is unreasonable to expect a physician to make, on [her] own accord, the detailed functional assessment demanded by the Act in support of a patient seeking . . . benefits." *Ubiles v. Astrue*, No. 11-CV-6340T MAT, 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012); *see also Robert S. v. Comm'r of Soc. Sec.*, No. 3:18-CV-357 (ATB), 2019 WL 4463497, at *10 (N.D.N.Y. Sept. 18, 2019) ("[B]ecause treating physicians appropriately focus on a patient's diagnosis and treatment, it is unreasonable for the ALJ to expect that Plaintiff's treating physicians would document and support detailed functional assessments in their treatment notes"). Here, the issuance of the 2016 opinion supports the conclusion that Dr. Bastible was available and willing to opine on Plaintiff's condition. The ALJ could and should have recontacted Dr. Bastible and requested a functional assessment. Instead, as discussed above, he erroneously decided to perform his own interpretation of the raw medical data. This was error and remand is required.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 5) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 2, 2020
      Rochester, New York